IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                     |   |                       |
|---------------------|---|-----------------------|
| GWENDOLYN DOZIER    | : |                       |
|                     | : |                       |
|                     | : |                       |
| v.                  | : | CIVIL NO. CCB-06-2273 |
|                     | : |                       |
| JOHN POTTER         | : |                       |
|                     | : |                       |
|                     | : |                       |

...o0o...

## MEMORANDUM

Gwendolyn Dozier filed this suit against her employer John Potter, the Postmaster

General of the United States Postal Service ("USPS"), alleging discrimination based on gender,

race, age, and disability in violation of the Age Discrimination in Employment Act of 1967

(ADEA), Title VII of the Civil Rights Act, and the Rehabilitation Act of 1973.  Specifically,

Dozier alleges the defendant created a hostile working environment, discriminated and retaliated

against her, and denied reasonable accommodation of her disabilities.  The defendant filed a

motion to dismiss or, in the alternative, for summary judgment.  The matter has been fully

briefed and no hearing is necessary.  *See* Local Rule 105.6.  For the following reasons, the

defendant's motion for summary judgment will be granted.


I. Background

Dozier began working as a letter carrier for the USPS at the Loch Raven facility in

Baltimore, Maryland in February 1979. (Pl.'s Opp. Mem. at 1.)  On March 10, 1993,  Dozier was

injured on the job when postal equipment fell on top of her. (Compl. at ¶ 14.)  She suffered a

1

concussion as well as injuries to her head, neck, left shoulder, back, left hip, and thigh. (Pl.'s

Opp. Mem. at 5.)  As a result of these injuries, Dozier was diagnosed by her doctors in 2002 as

18 percent permanently disabled. (Pl.'s Opp. Mem. at Exhibit 6, Dr. Cooper Report.)  At this

time, she was also diagnosed with carpal tunnel syndrome, though it is unclear from the record

whether the carpal tunnel was due to her 1993 accident or whether it was an independent

development. (Pl.'s Opp. Mem. at 5.)

    In 1996 the USPS placed Dozier on permanent limited duty. (Pl.'s Opp. Mem. at 1.)  As a

result, Dozier was required to use a wheeled cart to deliver mail and to carry mail in smaller

bundles. (Pl.'s Opp. Mem. at Ex. 4, U.S. Department of Labor Duty Status Report, November

17, 1997.)  She was also not permitted to work any overtime hours.  *Id.*  Due to her injuries,

Dozier was required by her doctors to make regular trips, sometimes during work hours, to her

acupuncturist and physical therapist.  While this arrangement appeared to produce no immediate

conflict, in November 1998 the USPS placed a sick leave restriction in Dozier's file, requiring

that she have any use of sick leave approved in advance. (Pl.'s Opp. Mem. at Ex. 8, Sick Leave

Restriction Letter.)

    On December 18, 1998, Dozier filed a claim with the EEOC against the USPS for race,

sex, and disability discrimination. (Compl. at ¶ 17.)  This claim was settled by the parties on

March 29, 2000, though details of the claim and the settlement were not attached to the record.

(*Id.* at ¶ 18.)  On November 21, 2000, Dozier filed a second charge with the EEOC, alleging

disparate treatment and hostile work environment based on age and disability, and retaliation

based on her previous EEOC claim. (*Id.* at ¶ 19.)   It is unclear from the record how this claim

was resolved.  While these claims were pending, Dozier continued to be treated by her doctors

for pain stemming from the 1993 accident. (Pl.'s Opp. Mem. at Ex. 3.)

In 2000, the plaintiff and her doctors regularly complained about the willingness of the USPS to accommodate Dozier's medical restrictions. (See Pl.'s Opp. Mem. at Ex. 6, reports of Dr. John Cooper dated December 30, 2000 through May 19, 2005.)  In late 2004, the conflict between Dozier and the USPS intensified.  On August 20, 2004, Dr. John Cooper, who appears to be Dozier's psychologist, wrote a letter to the EEOC in which he stated that he had had "resistant communications" with Ray Spresser, Dozier's manager at the Loch Raven facility, and criticized Spresser for not complying with Dozier's medical restrictions. (Pl.'s Opp. Mem. at Ex. 6.)[1]

According to the plaintiff, on October 29, 2004, she was told that, due to a change in USPS policy, she could no longer "case," or manually sort, all the mail she delivered. Employees would instead be required to keep the "DPS" mail, which comes to the branch in direct delivery sequence order, separate from the cased mail. (Pl.'s Opp. Mem. at 4; *see also* Pl.'s Opp. Mem. at Ex. 9, Letter from Dozier to Mr. Curtis at the U.S. Department of Labor, June 19, 2005.)  When this new policy was implemented, Spresser informed Dozier that she would be required to keep the "cased" mail and the "DPS" mail separated with a separator card when she

---

[1] In the August 30 letter, Dr. Cooper wrote, "In addition to Ms. Dozier's physical condition is complicated with numerous stress events surrounding her job and stressful events that has often resulted in further exacerbation of her mental status.  She has had to fight the system for her much needed care, causing severs (sic) decompensation of her health and mental status. ... She has been diagnosed as 18% permanently disabled by Dr. Norman B. Rosen, M.D., Ms. Dozier's injury specialist.  And recently carpal tunnel syndrome.  Mainly due to her supervisor's (Mr. Ray Spressor) refusal to comply with medical mandates.  I have had resistant communications with this person."  (Pl.'s Opp. Mem. at Ex. 6.)

Dr. Cooper did not specify, however, the nature of the "resistant communications" or the actions the USPS took to prevent Dozier from complying with her medical restrictions.

was making her deliveries, in order to comply with her medical restrictions. (Defs. Mem. at Ex. 1, Spresser Dep. at 80.)  Carriers who did not have medical restrictions also were required to keep "cased" and "DPS" mail separate, but were not required to use the separator card. (*Id*. at 82.)  Dozier argued that using the separator card exacerbated her carpal tunnel syndrome and would have required her to violate her medical restrictions.  (Pl.'s Opp. Mem. at 9.)  Dozier maintained the USPS should have exempted her from the new policy allowing her to deliver the mail in the same manner she did before the policy change.

On November 10, 2004,  Dozier filed a third complaint with the EEOC again alleging discrimination based on her physical disability, age, sex and race. (Compl. at ¶ 25.)[2]  Dozier states that management took disciplinary action against her on the following day, but Dozier does not specify the form of the discipline nor does she have documentation that corroborates any actions taken against her.  (Pl.'s Opp. Mem. Exhibit 9, Letter from Dozier to Mr. Curtis at the U.S. Department of Labor, June 19, 2005.)

Just over a month later, on or about December 17, 2004, Dozier met with Matthew Staley, the station manager at the Loch Raven facility, regarding Dozier's physical limitations. In addition to Staley and Dozier, present at the meeting were Lela Francis, the acting manager of the "Injury Comp" section of the USPS, and Charles Swisko, a union representative.  Staley reports that he viewed it as his duty at the meeting to ensure "that my employees are not violating their own medical restrictions;" accordingly he offered Dozier two alternative modified assignments.  (Defs. Mem. at Ex. 2, Staley Dep. at 65.) The first assignment (offered in writing)

---

[2]Again, no details of this proceeding are discussed by either party and the only document pertaining to it included in the record is a hearing notification. (Pl.'s Opp. Mem. at Ex. 8.)

would have involved building security, processing waste mail, and collections, while the second involved delivering express mail in the morning and collections in the afternoon.  (*Id.* at 65-66, 74-76.)

Staley testified that Swisko told Dozier the first assignment "looked like a good job offer. It didn't violate any restrictions and furthermore it was a very good job offer."  (*Id.* at 72, 78.) Staley also reports Francis telling Dozier that, pending a suitability determination by the Department of Labor, Dozier would either need to accept the job or be placed on without pay (WOP) status.  (*Id.* at 72.)  Staley reports that Dozier refused the new assignments, stating "I have a job."  (*Id.* at 78-79.)

Staley testified he followed up with Dozier in early 2005: "I believe I called her to ask her, what her status was, was she coming back to work.  You know, the job offer was still there. You know, she was being placed in a WOP status and we were going to take the necessary action if she didn't return to work." (*Id.* at 81.)  In March 2005, Dozier filed a grievance with the USPS challenging her placement on without-pay (WOP) status.  According to Staley, management and the union met to discuss Dozier's situation, and the parties agreed that the modified position offered to Dozier was acceptable to the union.  (Def.'s Mem at Ex. 2, Staley Dep. at 82.)  The parties further agreed that Dozier had "twenty days to present documentation for review or return back to duty."  (*Id.*)  Dozier did not present the requested documentation, nor did she return to work in one of the positions offered to her. (*Id.*)  Dozier remained on leave without pay status until October 25, 2005, at which point she was discharged. (Pl.'s Opp. Mem. at Ex. 8, Notification of Personnel Action Form.)

Dozier's doctors apparently did not believe that she could perform the duties of the

modified position within her medical restrictions.  In a note dated December 16, 2004, Dr.

Rosen, one of Dozier's doctors, rejected the modified job offer that was made to her, stating that

it would require her to work outside of her medical restrictions. (Pl.'s Opp. Mem. at Ex. 4, Status

Report.)[3]  Dr. Hoffberg, Dr. Rosen's partner, subsequently wrote a letter to the Department of

Labor stating that working outside of her restrictions had increased Dozier's symptoms and

requesting a return to her previous duties. (*Id*. at Ex. 3, Letter from Dr. Howard Hoffberg,

December 30, 2004).  Dr. Cooper reiterated this request in a letter to the Department of Labor

dated May 15, 2005; he sent copies of the letter to Maryland Senators Barbara Mikulski and Paul

Sarbanes, as well as the NAACP, USPS, and several of  Dozier's doctors. (*Id*. at Ex. 6.)  Dr.

Cooper wrote "It is seldom that this office advocates for a client, however, after twelve (12)

years without resolve from a postal accident, we are compelled to assist Mrs. Dozier in these

unprecedented actions." *Id.*  Dr. Cooper went on to state that Dozier was given ultimatums about

the alternative positions she was offered and was not given a chance to talk to her doctors before

making a decision.  *Id.*

     The plaintiff's most recent action with the EEOC was dismissed without prejudice on

July 26, 2005. She filed this action on August 31, 2006, alleging discrimination, hostile work

environment, and retaliation.


II. Standard of review

     The defendants have moved to dismiss for failure to state a claim under Fed.R.Civ.P.

---

[3]Dr. Rosen did not specify which of the two assignments offered to Dozier by Staley was inappropriate for Dozier's medical status.

12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. A court considers

only the pleadings when deciding a Rule 12(b)(6) motion.  Where the parties present matters

outside of the pleadings and the court considers those matters, as here, the motion is treated as

one for summary judgment. *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick,* 109 F.3d

940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.,* 241 F.Supp.2d 551,

556 (D. Md. 2003).  The parties, however, "shall be given reasonable opportunity to present all

material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).  The requirement of

"reasonable opportunity" means that all parties must be provided with notice that a Rule 12(b)(6)

motion may be treated as a motion for summary judgment, which can be satisfied when a party is

"aware that material outside the pleadings is before the court." *Gay v. Wall,* 761 F.2d 175, 177

(4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 261 (4th

Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious").

    The plaintiff had adequate notice that the defendant's motion might be treated as one for

summary judgment.  The motion's alternative caption and attached materials are in themselves

sufficient indicia.  *See Laughlin*, 149 F.3d at 260-61.  Moreover, Dozier submitted additional

documentary exhibits, which she referred to and relied upon in her opposition motion.  If the

plaintiff had thought that further discovery was necessary to oppose summary judgment

adequately, Rule 56(f) obligated her not only to indicate her need for discovery but to set out

reasons for that need in an affidavit, which she has not done. *See* Fed. R. Civ. P. 56(f); *see also*

*Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on

assertions of inadequate discovery when the nonmoving party failed to make an appropriate

motion under Rule 56(f)).  Therefore, the court will consider the affidavits and additional

materials submitted by the parties and will treat the motion of the defendant as a motion for

summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean any factual dispute will defeat the

motion:

By its very terms, this standard provides that the mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that there be no
*genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence in the light most favorable to...the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002),

but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Finally, the court notes that *pro se* filings are "held to less stringent standards than formal pleadings drafted by lawyers." *Allen v. Brodie*, 573 F.Supp. 87, 89 (D.Md.1983) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also Symeonidis v. Paxton Capital Group, Inc.*, 220 F.Supp.2d 478, 480 n.4 (D.Md. 2002) (applying this principle in ruling on a summary judgment motion, but noting that *pro se* pleadings "must still set forth facts sufficient to withstand summary judgment").

III. <u>Analysis</u>

    A.  Rehabilitation Act and the ADA

Dozier argues she is a qualified individual under the Rehabilitation Act, that the USPS discriminated against her on the basis of her disability, and that she was discharged in whole or in substantial part because of her disabilities. (Compl. at ¶¶ 60, 63.)  Additionally, her complaint appears to allege that the USPS failed to make reasonable accommodations for her disability under the Americans with Disabilities Act ("ADA"). *(Id.* at ¶ 61, 63.)   Because Dozier is representing herself, the complaint will be treated as though it explicitly included the second claim.

The ADA and Rehabilitation Act prohibit discrimination against an otherwise qualified individual with a disability based solely on that disability.  42 U.S.C. § 12112(a); 29 U.S.C. § 794(a).   To establish a prima facie case, the plaintiff must prove (1) that she has a disability; (2) that she is otherwise qualified for the job; and (3) that defendants discharged her due to discrimination based on her disability. *Doe v. Univ. of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264-65 (4th Cir. 1995); *Tyndall v. Nat'l. Educ. Ctrs.*, 31 F.3d 209, 212 (4th Cir. 1994)).

Plaintiff has also alleged that the USPS failed to make a reasonable accommodation for her disability.  The ADA defines a 'reasonable accommodation' to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111.  The Fourth Circuit has held that to establish a prima facie case for failure to accommodate, the plaintiff must show that (1) she was an individual who had a disability within the meaning of the statute; (2) the employer had notice of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999).

The ADA and Rehabilitation Act define a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2); *see also Morris v. Mayor & City Council of Balt.*, 437 F. Supp. 2d 508, 514 (D. Md. 2006).  Dozier has alleged that her disability, the result of the 1993 injury on the job, substantially limits her in the major life activity of working. (Pl.'s Mem. Opp. at 11.)  The Supreme Court has required that "when the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999).  Thus, "the inability to perform a single, particular job does not constitute a

substantial limitation in the major life activity of working." *Id.* (citing 29 C.F.R. §

1630.2(j)(3)(i)).  In the Fourth Circuit, an employee must demonstrate that because of her

impairment, she was "generally foreclosed" from jobs utilizing her skills.  *Rhoads*, 257 F.3d at

388 (citing *Gupton v. Virginia*, 14 F.3d 203, 205 (4th Cir. 1994)).

Dozier has not demonstrated that she is incapable of performing a broad class of jobs.  In

her opposition, Dozier states, "there is no large availability of jobs that can be offered to me that

I can do with my disabilities." (Pl.'s Opp. Mem. at 11.)  The evidence provided by Dozier,

however, shows only that she was unable to perform her letter carrier duties and, apparently, the

duties of one alternative position that was offered to her, though the plaintiff does not elaborate

how this job would violate her medical restrictions. *(See id.* at Ex. 3.)  There is no evidence that

Dozier would be precluded from other jobs for which she would be qualified.  Her doctors have

opined she was unable to perform the new duties of the position, but did not speak to Dozier's

ability to work at a broad class of jobs. (*See id.* at Ex. 6.)  Thus, Dozier has not demonstrated that

she is disabled under the statutes.  *See Rhoads*, 257 F.3d at 388 ("[Plaintiff] has failed to make a

sufficient showing that she was substantially limited in her ability to work, where she has

established only that she was unable to function in one particular smoke-infested office.");

*Gupton*, 143 F.3d at 205("While she did introduce evidence that her allergy... made her unable to

continue in her current position working as a highway utilities specialist in the VDOT's Fair

Ridge office, she presented no evidence that her allergy foreclosed her generally from obtaining

jobs in her field.").

The defendant also did not "regard" Dozier as disabled.  The fact that the USPS knew

that Dozier was incapable of performing one aspect of her job does not necessarily mean that she

was regarded as disabled.  *See Haulbrook v. Michelin North Am., Inc.*, 252 F.3d 696, 703 (4th Cir. 2001).  An employer regards an employee as disabled only where it erroneously believes either that the employee has an impairment that substantially limits a major life activity, or that the employee's actual, nonlimiting impairment substantially limits a major life activity.  *Sutton*, 527 U.S. at 489.  Where the major life activity is working, the employer must perceive the employee "to be significantly restricted in [her] ability to perform either a class of jobs or a broad range of jobs in various classes."  *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 277 (4th Cir. 2004) (alteration in original)(quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998).  "[O]ne must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs."  *Rohan*, 375 F.3d at 277 (quoting *Sutton* 527 U.S. at 492).  Here, there is no evidence that the defendant regarded Dozier as substantially limited in her ability to work.  In fact, the defendant appeared to believe the opposite, because when Dozier indicated she was unable to perform the duties of her letter carrier position, she was offered two alternative positions with the USPS, indicating the defendant's belief that Dozier was capable of working at a broad class of jobs.  For these reasons, I conclude Dozier does not qualify as disabled under either the Rehabilitation Act or the ADA.

B. Hostile Work Environment

Under Fourth Circuit law, to succeed on a claim for a racially hostile work environment, the employee must show that the harassment was: 1) unwelcome, 2) based on race, 3) sufficiently severe or pervasive to alter the conditions of employment, and 4) there was some

12

basis for imposing liability on the employer.  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001). The harassment must be both objectively and subjectively severe and pervasive. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). In determining whether conduct is sufficiently severe and pervasive, the courts look to the "totality of the circumstances," including 1) the frequency of the discriminatory conduct, 2) the severity of the conduct, 3) whether the conduct was physically threatening, humiliating, or a mere offensive utterance, and 4) whether it unreasonably interferes with an employee's work performance.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).  Similarly for claims based on disability, an ADA plaintiff must prove the following to establish a hostile work environment claim: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.  *See Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).

Dozier alleges "[o]ther younger, similarly situated male and/or Caucasian employees were not subject to the same terms or conditions of employment as Dozier from 2000-2005" and that "Defendant's actions against Dozier ... were based on her gender, age, and race.  (Compl. at ¶¶ 33, 47.)  Dozier does not, however, specifically allege which actions the defendant took to create a hostile work environment.  Although she states the defendants harassed her based on her race, gender, and disability, Dozier does not specify any statements made, or actions taken, by the defendants that were sufficiently severe or pervasive to alter a term, condition, or privilege of employment.  Nor did she explain how she was treated less favorably than other employees, or

which employees were better treated than she.  While Dozier has alleged that she was fired

because of her race, age, gender, and disability, Dozier has not provided any evidence the

defendant made even one reference to her race, age, or gender in any statement or action taken

against her.

"Conclusory statements, without specific evidentiary support, cannot support an

actionable claim for harassment."  *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).  While I

have no reason to doubt that her situation at the Postal Service caused Dozier added stress,

employees are not guaranteed a stress-free environment under Title VII.  *See Riley v. Technical*

*and Management Serv. Corp., Inc.*, 872 F.Supp. 1454, 1462 (D. Md. 1995).  Accordingly,

summary judgment will be granted for the defendant on Dozier's claim of hostile work

environment.


C. Disparate Treatment

Under Title VII, it is unlawful for an employer "to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Dozier has not, however, presented any direct evidence of employment discrimination by the

defendant.  Thus, her Title VII claims will be analyzed under the burden shifting test set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See, e.g.*, *Kess v. Mun.*

*Employees Credit Union, Inc.*, 319 F.Supp.2d 637, 644 (D. Md. 2004).  Under this test, a

plaintiff must first establish, by a preponderance of the evidence, a prima facie case of

discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).  To do so, a

plaintiff must generally show: (1) she is a member of a protected class; (2) she was performing her duties in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) circumstances surrounding the adverse employment action support an inference of discriminatory intent. *Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 581 (D. Md. 2002).

If the plaintiff establishes a prima facie case, the burden then shifts to the employer to produce evidence that the employment decision was made for legitimate nondiscriminatory reasons. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once the employer articulates a nondiscriminatory explanation for its decision, the plaintiff must prove by a preponderance of the evidence that the defendant's proffered reasons were merely pretext for discrimination. See *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000). The prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated, but may not always be adequate to sustain a jury's finding of liability. *Id*. at 148.

It is possible that Dozier is claiming discrimination relating to two separate adverse employment actions.  Dozier may be basing her claim on the change of policy USPS implemented regarding whether employees were allowed to case mail.  If this change of policy is the basis of her claim, Dozier would have to prove that the policy change, as it affected her, was an adverse employment action.  Assuming *arguendo* that the change of policy resulted in an adverse employment action, Dozier might be able to make out a prima facie case of discrimination.  Dozier's claim fails, however, because she has provided no evidence that the defendant's decision to change policy was a pretext for discrimination against Dozier.

According to the defendant, the USPS changed its policy of which mail was to be cased, across the board, and subsequently all of its employees were forced to change the methods by which they cased mail.  Dozier has provided no evidence that the USPS made its change of policy in an effort to target Dozier specifically.  Nor has Dozier provided evidence to the effect that the USPS was selectively enforcing the policy and chose to enforce it against Dozier but not against other employees.

Alternatively, Dozier may intend to base her discrimination claim on her ultimate firing from the USPS, as appears more likely.  The defendant argues Dozier is unable to make out a *prima facie* case because she cannot show that she was performing her duties satisfactorily as required by the second prong of *McDonnell Douglas*.  Indeed, Dozier appears to concede she was unable to perform the duties of the new position, as she argues that she stopped coming to work because she could not comply with the new policy under her medical restrictions.  The record reveals that Dozier's doctors confirmed that the new USPS policy would force her to work outside her medical restrictions.  Dozier has, thus, conceded that she was unqualified for the position and thus she is unable to establish a prima facie case of discrimination.  Summary judgment will be granted on her claim for discrimination.[4]

D. Retaliation

---

[4] Even if Dozier had made out a prima facie case of discrimination, she has again provided no evidence that the defendant's stated reason for her firing - her inability or refusal to come to work - was a pretext for discrimination.  There appears to be no dispute that Dozier did not feel she could properly fulfill the responsibilities of the new position and did not continue to come to work; accordingly USPS fired her.  Dozier has not shown that discriminatory animus motivated the firing.

In her complaint, Dozier alleges "Defendant's actions regarding the removal of Dozier in May, 2005 occurred shortly after she engaged in protected activity in November, 2004, when she complained about unlawful discriminatory activity in part, and also because she complained to Defendant's employees previously about Defendant's failure to reasonably accommodate her in 2004." (Compl. at ¶ 56.)  Title VII's anti-retaliation provision forbids discrimination against employees who have opposed any practice made unlawful by Title VII or who have "made a charge, testified, assisted, or participated" in a Title VII "investigation proceeding or hearing." 42 U.S.C. 2000e-3(a).  Thus, to state a prima facie case of retaliation, Dozier must show: 1) she engaged in protected activity; 2) defendants took an adverse employment action against her; and 3) a causal connection existed between the protected activity and the employment action. *E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405-406 (4th Cir. 2005). The Supreme Court has held that the adverse employment action need not be a so-called "ultimate employment decision." *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2414 (2006). Rather, the plaintiff must demonstrate that a reasonable employee would have found the challenged action materially adverse, such that the employer's actions could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2409.  As with a substantive discrimination claim, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate nondiscriminatory reason for its action.  To survive summary judgment, the plaintiff must present evidence from which a juror could conclude by a preponderance of the evidence that the employer's proffered reasons are pretext for intentional retaliation.

Here, Dozier contends she engaged in a protected activity by filing a complaint of

discrimination on November 10, 2004 and that the defendants took an adverse employment

action against her on May 30, 2005 when she was fired.[5]  While she does not explicitly say this,

Dozier appears to rely on the temporal proximity of the two events to prove a causal connection.

Defendant contends that the six month time lapse between the plaintiff's protected EEOC claim

and when she was discharged is sufficient to negate causation. (Def.'s Mem. at 13) (citing

*Hooven-Lewis v. Caldera,* 249 F.3d 259, 278 (4th Cir. 2001)). While the lapse of an appreciable

period of time may establish an inference against causation, the Fourth Circuit recently held that

"in cases where 'temporal proximity between protected activity and allegedly retaliatory conduct

is missing, courts may look to the intervening period for other evidence of retaliatory animus.'"

*Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers

Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

      Given the interactions between Dozier and the defendant after Dozier's filing of her

EEOC complaint, I will assume without deciding that Dozier is able to establish a prima facie

case.  Nevertheless, Dozier's claim fails, because she is unable to overcome the defendant's non-

pretextual reason for firing her.  As with the discrimination claim, the defendant's stated reason

for the plaintiff's firing was her refusal to show up for work and her inability to properly fulfill

the responsibilities of her new position.  (*See* Def.'s Mem. at Ex. 1, Deposition of Raymond

Spresser at 16.) Dozier has provided no evidence showing that the defendant's reason was pre-

---

[5] In a letter to a Mr. Curtis in the Department of Labor, Dozier actually alleges that the defendant took an adverse employment action against her the day after she filed her complaint: "Because management decided I was not to work within this Medical Restriction, they took disciplinary action against me on November 11, 2004."  (Pl.'s Opp. Mem. at Ex. 9.)  The adverse employment action taken on November 11 is not explained in any detail, however, on the record.

textual.  Indeed, the defendant's apparent attempts to place Dozier with another position at USPS after the plaintiff filed her EEOC complaint helps demonstrate that the defendant did not fire Dozier for filing her claim of discrimination.

While it is regrettable that the USPS could not continue to allow Dozier to perform her duties in a manner compatible with her medical restrictions, the record, even when taking account of Mrs. Dozier's pro se status, does not present sufficient evidence to demonstrate a dispute of material fact as to her claims.  Commendably, the USPS did offer Dozier a reasonable alternative job, which she chose not to accept.  Accordingly, the defendant's motion for summary judgment will be granted.

A separate Order follows.


\_\_\_\_\_July 20, 2007\_\_\_\_\_          _____/s/_____
             Date                                            Catherine C. Blake
                                                             United States District Judge